*Marc R. Thompson*
*Pulvers Pulvers & Thompson, LLP*
*950 Third Avenue 11th Floor*
*New York, NY 10022*
*Attorney for Plaintiff*
*TEL: (212) 355-8000 / FAX: (212) 355-9000*
mthompson@pulversthompson.com

**UNITERD STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | |
|---|---|
| MOTIQUE GRAVES, as Administrator of the Estate of TYQUARN TAMEKE GRAVES a/k/a MALIK TYQUARN GRAVES, | ) ) ) ) |
| *Plaintiff,* | ) |
| -against- | ) **COMPLAINT** |
| | ) Docket No: |
| THE CITY OF NEW YORK, CITY OF NEW YORK POLICE DEPARTMENT, P.O. CHRISTIAN SANTOS, P.O. CHRISTIAN FERACA, SERGEANT RICHARD GALVEZ, P.O. RAYMOND SANCHEZ, P.O. ERNESTO DEFREITAS, P.O. JOHN LORETO, P.O. SANDEEP THOMAS, P.O. MICHAEL NAPOLITANO, P.O. DANIEL STAFFA, P.O. BRETT OSTRANDER and P.O. COLIN RUSSELL | ) ) **TRIAL BY JURY DEMANDED** ) ) ) ) ) ) ) ) ) |
| *Defendants* | ) ) |

-----------------------------------------------------------------x

**PRELIMINARY STATEMENT**

Plaintiff, MOTIQUE GRAVES, as Administrator of the Estate of TYQUARN TAMEKE GRAVES a/k/a MALIK TYQUARN GRAVES by her attorneys PULVERS, PULVERS & THOMPSON, LLP and GOLDBERG & CHASE, LLP state as follows:

1

**INTRODUCTION**

1. This case arises from the negligent wanton and willful conduct on the part of seven Police Officers assigned to patrol in the 77th Precinct together with three Police Officers assigned to patrol in Police Service Area 2 who fired a total of sixty-two (62 shots) from their service firearms on June 2, 2020 that resulted in the unnecessary and tragic death of TYQUARN TAMEKE GRAVES a/k/a MALIK TYQUARN GRAVES the 34 year old son of Plaintiff Motique Graves.

2. Plaintiff seeks compensation for the unconstitutional and tortious conduct of the defendant police officers who violated the law and basic policies and procedures put in place by the City of New York Police Department (hereinafter "NYPD") authorizing the use of deadly physical force and more specifically the discharge of firearms in appropriate circumstances that did not exist in this case.

3. This case arises from an officer involved shooting that occurred in the 77th Precinct on June 2, 2020 in front of 253 Kingsborough Walk in Brooklyn. The incident began following a shooting when, unknown to the police officers, a 49 year old individual was shot in the leg on Bergen Street near Kingsborough 1st Walk. Police later learned after the killing of Tyquarn Graves that it was in fact Mr. Graves who shot this individual. However, this was unknown to the Police at the time the police officers fired their weapons killing Tyquarn Graves.

4. The gunshots fired on Bergen Street triggered a "shots spotted alert" and officers responded to the scene. P.O Christian Santos was the first officer on the scene to investigate the shots spotted alert. He observed Tyquarn Graves lying face down behind a tree in front of 253 Kingsborough 2nd Walk. Officer Santos ordered Mr. Graves not to move. However, Mr. Graves moved from a lying position to his knees at which time P.O. Santos observed a firearm in Mr.

Graves hand. Officer Santos ordered Mr. Graves to "put it down and stop moving and let me see your hands.

5. The contradictory orders given by officer Santos obviously confused Mr. Graves who stood up, still with the gun in his hand. At least one officer, believed to be P.O. Colin Russell, determined without any basis that Mr. Graves was about to fire his weapon which, we later learn, was not loaded.

6. The officers on the scene, in violation of NYPD guidelines all began screaming at Mr. Graves to stop moving show us your hands, put your hands behind your back, drop the f***ing gun. In the midst of all the shouting, there is no indication on any of the body worn camera video that Mr. Graves demonstrated any aggression. He did not move but he did not drop the gun.

7. In the video Mr. Graves appears to be paralyzed with fear with all the shouting of contradictory instructions that went on for two minutes and twenty three seconds.

8. This scene, which can only be described as mayhem, then escalated to the point where one of the officers discharged his weapon and then a hail of sixty-one more shots were fired with fifty of them missing Mr. Graves altogether and ten shots striking him resulting in his death.

9. According to the Force Investigation, Sergeant Richard Galvez fired one (1) shot; P.O. John Loreto fired eleven (11) shots; P.O. Sandeep Thomas fired seven (7) shots; P.O. Michael Napolitano fired two (2) shots P.O. Raymond Sanchez fired two (2) shots P.O. Christian Feraca fired ten (10) shots; P.O Ernesto Defreitas fired ten (10) shots; P.O. Daniel Staffa fired ten (10) shots P.O. Brett Ostrander fired five (5) shots and P.O. Colin Russell fired four (4) shots.

10. The death of Tyquarn Graves was the result of a complete breakdown of supervision and command all in violation of NYPD guidelines.

11. It is noteworthy that the first officer on the scene, P.O. Santos, heard to be the officer communicating with Mr. Graves never fired a shot.

## JURISDICTION

12. Jurisdiction is claimed under 42 U.S.C. §§ 1981. 1983, 1988; the 14th Amendment to the United States Constitution, Article 1 §11 of the New York State Constitution and the laws of the State of New York together with 28 U.S. C. §§ 1331, 1343 (1-4).

13. In addition, Plaintiff invokes the supplemental jurisdiction of this court to adjudicate pendant state law claims under 28 U.S.C. §1367.

## VENUE

14. Venue is proper in this District under 28 U.S.C. §1391(b).

## PARTIES

15. Tyquarn Graves deceased was a resident of the State of New York residing the County of Kings.

16. Motique Graves is the mother of Tyquarn Graves and is authorized to maintain this lawsuit by Order of the Hon. Carol Edmead, Surrogate's Court, Kings County dated May 31, 2022 granting her Letters of Administration for the Estate of Tyquarn Tameke Graves a/k/a Malik Tyquarn Graves.

17. The City of New York is a municipal Corporation within the State of New York and is the employer of the Police Officers named herein.

18. The City of New York Police Department (NYPD) is an agency of the City of New York existing under and by virtue of the Laws of the State of New York.

In addition to the facts alleged hereinafter, the following individual defendants were sued in their official and individual capacities and all acted within the scope of their employment with the City of New York and the NYPD and under color of state law pursuant to Administrative Codes, statutes, guidelines rules, regulations, policies and procedures of the State of New York and the City of New York and the NYPD:  P.O. Christian Santos, P.O. Christian Feraca, Sergeant Richard Galvez, P.O. Raymond Sanchez, P.O. Ernesto Defreitas, P.O. John Loreto, P.O. Sandeep Thomas, P.O. Michael Napolitano, P.O. Daniel Staffa, P.O. Brett Ostrander And P.O. Colin Russell

## NOTICE OF CLAIM

19. Plaintiff in furtherance of her State Cause of Action filed a timely Notice of Claim pursuant to NY The expert will discuss generally the subject of Gen. Municipal L. §50-e.

20. More than thirty days has elapsed since service of said Notice of Claim and the City of New York has failed to pay or adjust such claim.

21. The City of New York has never asked plaintiff to appear for a hearing pursuant to the provisions of Gen. Municipal L. §50-h.

22. This action has been commenced with the statutory time required by New York Gen. Municipal L. §50-i after the happening of the events giving rise to this law suit.

## FACTUAL AND GENERAL ALLEGATIONS

23. During the evening hours of June 2, 2020 Tyquarn Graves was observed by P.O. Christian Santos lying face down behind a tree in front of 253 Kingsborough 2nd Walk in Brooklyn with a firearm in his hand.

5

24. Shortly before Mr. Graves was found, a civilian reported that she observed shots fired on Bergan Street near Kingsborough Walk and a body laying on the ground.

25. The civilian report resulted in a 'SHOTS SPOTTED ALERT" to which the police officers named in this lawsuit responded to investigate.

26. At the time he discovered Mr. Graves lying face down P.O. Santos, had responded to the scene of the "shot spotted alert" along with other officers of the 77th Precinct and Police Service Area 2.

27. Upon observing Mr. Graves, Officer Santos ordered him to lie still and not move.

28. Upon being ordered by officer Santos to lay still Mr. Graves got up to his knees with a firearm in his hand.

29. Officer Santos ordered Mr. Graves not to move and to put the gun down.

30. Other officers were now aware of Mr. Graves being armed with a handgun and took cover behind a line of parked cars on Bergan Street.

31. Some of the other officers on the scene who are named as defendants in this lawsuit, also shouted orders Mr. Graves to "drop the gun" while others ordered him to "show me your hands" and "don't move" and another officer told him to "drop the gun and move away"

32. Mr. Graves moved from his knees to a standing position, still holding the gun in his hand..

33. Over the next two minutes and twenty three seconds officers shouted commands such as "don't move", "show me your hands", "drop the gun", "put the f***ing gun down" and "put the gun down and move away".

34. The commands giving to Mr. Graves were contradictory and confusing.

35. An officer who has never been identified determined that Mr. Graves was going to discharge the firearm he was holding and fired a shot which was immediately followed by 61 more shots fired, only ten of which struck Mr. Graves killing him.

36. The officers who the Force Investigation Unit identified as discharging their service weapons were as follows: Sergeant Richard Galvez fired one (1) shot; P.O. John Loreto fired eleven (11) shots; P.O. Sandeep Thomas fired seven (7) shots; P.O. Michael Napolitano fired two (2) shots P.O. Raymond Sanchez fired two (2) shots P.O. Christian Feraca fired ten (10) shots; P.O Ernesto Defreitas fired ten (10) shots; P.O. Daniel Staffa fired ten (10) shots P.O. Brett Ostrander fired five (5) shots and P.O. Colin Russell fired four (4) shots.

37. Officer Christian Santos who was communicating with Mr. Graves and attempting to de-escalate the situation never discharged his firearm.

38. Mr. Graves was taken to Interfaith Medical Center and pronounced dead from gunshot wounds.

39. The weapon that Mr. Graves had in his hand when he was shot was an unloaded High-Point 9 mm semi-automatic handgun.

40. The most senior officer on scene was Sergeant Richard Galvez who did not assume command of the scene.

41. Based on a review of the voluminous body worn camera footage, Officer Santos was engaging Mr. Graves in an attempt to get control of the situation.

42. Based on a review of the body worn camera footage Mr. Graves, although he was refusing to lower his weapon was not moving aggressively; was not verbally threatening the police officers; was. not attempting to flee; and never attempted to fire the handgun he was holding.

7

43. At the time the police officers engaged Mr. Graves they did not know whether he was the person who shot the individual on Bergen Street that led to the "shot spotted alert".

44. The guidelines, policies and procedures of the NYPD for use of deadly force and discharging a service firearm require that clear non contradictory commands be given and that efforts be made to take control of a situation to effectuate the surrender of a suspect prior to firing a service weapon.

45. The aforesaid acts were committed under color of state law and as such are violative of the 14th Amendment.

## DAMAGES

46. As a direct and proximate result of the said acts of the defendants Tyquarn Graves by sustained the following injuries:

   a. Violation of his rights under the 14th Amendment to the United States Constitution.

   b. Excessive force upon his person in violation of his rights

   c. Fear of impending death

   d. Conscious pain and suffering.

   e. Wrongful death.

## CAUSES OF ACTION

### COUNT I

**42 U.S.C. §1983 – USE OF UNREASONABLE AND EXCESSIVE FORCE**

47. The plaintiff repeats and reiterate each and every allegation of the complaint in paragraphs 1 through 46 as if set forth fully and at length hereinafter.

48. By their conduct, each the individually named defendant police officers, P.O. Christian Santos, P.O. Christian Feraca, Sergeant Richard Galvez, P.O. Raymond Sanchez, P.O. Ernesto Defreitas, P.O. John Loreto, P.O. Sandeep Thomas, P.O. Michael Napolitano, P.O. Daniel Staffa, P.O. Brett Ostrander and P.O. Colin Russell under color of state law, deprived Tyquarn Graves of his constitutional right to be free from harm as a result unreasonable and excessive force upon his person resulting in pain and suffering and ultimately in his death.

49. As a result of the aforesaid Motique Graves as Administrator of the Estate of Tyquarn Graves claims damages.

## COUNT II

## 42 U.S.C §1983 – SUPERVISORY LIABILITY

50. Plaintiff repeats and reiterates each allegation in the paragraphs of the complaint numbered "1" through "49" as if set forth fully and at length hereinafter.

51. Upon information and belief Defendant Sergeant Richard Galvez was the supervisor on the scene with oversight responsibility for the police officers when Tyquarn Graves was shot and killed.

52. Upon information and belief, Sergeant Galvez was responsible for the training instruction and supervision of police officers at the scene when Tyquarn Graves was shot and killed and amounted to gross indifference to his constitutional right to be free from the use of excessive unreasonable force on his person resulting in pain and suffering and eventually in his death.

53. Plaintiff alleges that the failure to instruct supervise and discipline the officers at the scene when Tyquarn Graves was shot and killed was intentional and amounted to deliberate indifference to Mr. Graves constitutional rights and gross negligence.

54. Plaintiffs allege that had the police officers at the scene been properly trained, instructed and supervised, the death of Tyquarn Graves was avoidable.

55. As a result of the aforesaid Motique Graves as Administrator of the Estate of Tyquarn Graves claims damages.

### COUNT III

### 42 U.S.C. §1983 – FAILURE TO PROPERLY TRAIN

56. The plaintiff repeats and reiterates each and every allegation of the complaint numbered "1" through "53" as if set forth fully and at length hereinafter.

57. Upon information and belief the NYPD had the obligation to train and instruct police officers in general and more particularly the officers who discharged their service firearms and killed Tyquarn Graves.

58. The failure of the NYPD to instruct police officers in the use of deadly physical force and discharging of firearms in situations such as the one described herein amounted to gross negligence and was a direct and proximate cause of the death of Tyquarn Graves.

59. As a result of the aforesaid Motique Graves as Administrator of the Estate of Tyquarn Graves claims damages

### COUNT IV

### 42 U.S.C. §1983 – MONELL CLAIM

60. The plaintiff repeats and reiterates each and every allegation of the complaint numbered "1" through "59" as if set forth fully and at length hereinafter.

61. Prior to June 2, 2020 the City of New York through the NYPD developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of

its citizens which caused the deprivation and violation of Tyquarn Graves right to be free from the use of excessive and unreasonable force resulting in pain and suffering and ultimately his death.

62. It was the policy of the City of New York to train police officers in the use of deadly physical force and discharging of fire arms.

63. The City of New York was aware that its policies were woefully inadequate and deliberately failed to take into consideration the likelihood that the implementation of the policies would result in the disparate treatment of persons such as Tyquarn Graves resulting in Mr. Graves suffering a brutal death as a result of the use of excessive unreasonable force which was avoidable.

64. The City of New York was aware that many of its police officers both senior and newly trained believed that the use of excessive force was necessary to carry out their duty as police officers.

65. The City of New York was aware that many of its training officers and line officers were deliberately indifferent to preventing the use of unreasonable excessive force and as a result, on June 20, 2020, ten officers fired 62 rounds in an effort to kill Tyquarn Graves.

66. The City of New York has failed take reasonable measures to discourage the violation of constitutional rights of its citizens by its police and such failure directly and proximately caused the death of Tyquarn Graves which was a foreseeable and preventable consequence of the City's policy.

67. It is universally accepted that whenever a gun is involved a suspect can be shot and killed even in a situation where the suspect has been given contradictory commands and

appears confused as a result of the manner in which officers at the scene encourage confusion on the part of a suspect which as what occurred in this case.

68. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens all with the foreseeable result that officers are more likely violate the constitutional rights of citizens.

69. As a result of the aforesaid Motique Graves as Administrator of the Estate of Tyquarn Graves claims damages.

**COUNT V**

**PENDANT CLAIM WRONGFUL DEATH UNDER NY YORK EPTL §5-4.1**

70. The plaintiff repeats and reiterates each and every allegation of the complaint numbered "1" through "69" as if set forth fully and at length hereinafter.

71. The decedent left him surviving various distributees and heirs for whom he provided guidance and support.

72. The decedent's death was an avoidable consequence of the negligence, gross negligence and unconstitutional conduct of the defendants as described hereinabove.

73. The decedents death was a direct result of the negligent acts, omissions and conduct of the defendants P.O. Christian Santos, P.O. Christian Feraca, Sergeant Richard Galvez, P.O. Raymond Sanchez, P.O. Ernesto Defreitas, P.O. John Loreto, P.O. Sandeep Thomas, P.O. Michael Napolitano, P.O. Daniel Staffa, P.O. Brett Ostrander and P.O. Colin Russell, the City of New York and the NYPD.

74.     Upon information and belief, had the defendants P.O. Christian Santos, P.O. Christian Feraca, Sergeant Richard Galvez, P.O. Raymond Sanchez, P.O. Ernesto Defreitas, P.O. John Loreto, P.O. Sandeep Thomas, P.O. Michael Napolitano, P.O. Daniel Staffa, P.O. Brett Ostrander and P.O. Colin Russell attempted to deescalate the situation by giving appropriate and non-contradictory commands to control Tyquarn Graves who was obviously confused and frightened, his wrongful death could have been avoided.

75.     As a result of the wrongful death of Tyquarn Graves his distributees have suffered pecuniary loss and been damaged.

76.     As a result of the aforesaid Motique Graves as Administrator of the Estate of Tyquarn Graves claims damages.

## COUNT VI

### PENDANT CLAIM FOR NEGLIGENCE RESULTING IN CONSCIOUS AND SUFFERING

77.     Plaintiff repeats and reiterates each and every allegation of the complaint numbered "1" through "76" as if set forth fully and at length hereinafter.

78.     The defendants P.O. Christian Santos, P.O. Christian Feraca, Sergeant Richard Galvez, P.O. Raymond Sanchez, P.O. Ernesto Defreitas, P.O. John Loreto, P.O. Sandeep Thomas, P.O. Michael Napolitano, P.O. Daniel Staffa, P.O. Brett Ostrander and P.O. Colin Russell were negligent in their handling of the arrest, disarming and custody of TYQUARN GRAVES in failing to exercise the degree of skill training called for to control Tyquarn Graves without causing him harm; in failing to realize that Mr. Graves was intellectually challenged; in giving Mr. Graves confusing contradictory commands and instructions causing him to become confused and frightened, in failing to perceive the circumstances; in in engaging in conduct that

heightened the tension of the situation which resulted in Mr. Graves reluctance to drop the gun he was holding; in failing to engage in a controlled de-escalation by allowing a single individual to communicate with Mr. Graves; in failing to appreciate the fact that the first officer on the scene was controlling the situation; in shouting in a manner that increased the likelihood that Mr. Graves would become confused and frightened resulting in his failure to fully appreciate the situation he found himself in.

79. As a result of the aforesaid the Estate of Tyquarn Graves claims damages.

## COUNT VII

## PENDANT CLAIM FOR LIABILITY UNDER RESPONDEAT SUPERIOR

80. Plaintiff repeats and reiterates each and every allegation of the complaint numbered "1" through "79" as if set forth fully and at length hereinafter.

81. The defendant City of New York employed the defendants P.O. Christian Santos, P.O. Christian Feraca, Sergeant Richard Galvez, P.O. Raymond Sanchez, P.O. Ernesto Defreitas, P.O. John Loreto, P.O. Sandeep Thomas, P.O. Michael Napolitano, P.O. Daniel Staffa, P.O. Brett Ostrander and P.O. Colin Russell.

82. The defendants P.O. Christian Santos, P.O. Christian Feraca, Sergeant Richard Galvez, P.O. Raymond Sanchez, P.O. Ernesto Defreitas, P.O. John Loreto, P.O. Sandeep Thomas, P.O. Michael Napolitano, P.O. Daniel Staffa, P.O. Brett Ostrander and P.O. Colin Russell were acting within the scope of their employment when they discharged their service fire arms killing Tyquarn Graves.

83. The defendant City of New York is liable for the conduct of P.O. Christian Santos, P.O. Christian Feraca, Sergeant Richard Galvez, P.O. Raymond Sanchez, P.O. Ernesto

14

Defreitas, P.O. John Loreto, P.O. Sandeep Thomas, P.O. Michael Napolitano, P.O. Daniel Staffa, P.O. Brett Ostrander and P.O. Colin Russell under the doctrine of *respondeat superior*.

**WHEREFORE**, plaintiff request the following relief jointly and severally as against all of the defendants:

1. Award compensatory damages in an amount to be determined at trial;

2. Award punitive damages in an amount to be determined at trial;

3. Disbursements, costs, and attorneys' fees; and

4. For such other and further relief as to this Court may seem just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated: June 1, 2022
       New York, NY

>                   Yours etc.
>                   PULVERS PULVERS & THOMPSON, LLP
>
>                   *Marc R. Thompson*
>                   MARC R. THOMPSON – MRT 3445
>                   950 Third Avenue, 11th Floor
>                   New York, NY 10022-2775
>                   (212) 355-8000
>                   mthompson@pulversthompson.com